**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 12 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN R. TAYLOR,

      Defendant-Appellant.

No. 96-6173

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CR-95-158-T)**

---

Vicki Mandell-King, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender with her on the briefs), Denver, Colorado, for Plaintiff-Appellee.

Frank Michael Ringer, Assistant United States Attorney (Patrick M. Ryan, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Defendant-Appellant.

---

Before **BRORBY, HOLLOWAY** and **EBEL**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

An Oklahoma federal jury convicted John R. Taylor of possession with

intent to distribute cocaine base, conspiracy to possess with intent to distribute and to distribute cocaine base, and possession of a firearm by a convicted felon. The United States District Court for the Western District of Oklahoma sentenced Mr. Taylor to 360 months imprisonment for each offense. Mr. Taylor appeals his convictions, arguing: (1) the district court violated his Sixth Amendment right to counsel by failing to ensure he voluntarily, knowingly and intelligently waived that right, and (2) his conviction for possession of a firearm by a convicted felon was not supported by sufficient evidence. We reverse and remand to the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 26, 1995, Mr. Taylor was arrested for possession with intent to distribute cocaine base. Mr. Taylor appeared before a United States magistrate judge who appointed counsel, Joseph Wells, to represent Mr. Taylor. The magistrate judge also advised Mr. Taylor of his rights and the charges against him.

In November 1995, a grand jury returned an indictment against Mr. Taylor and three other named defendants. The indictment charged Mr. Taylor with the following four offenses: (1) conspiracy to possess with intent to distribute and to

distribute cocaine base, in violation of 21 U.S.C. § 846; (2) possession with intent

to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); (3) possession of

a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (4)

receipt of a firearm, in violation of 18 U.S.C. § 922(k).

On December 14, 1995, Mr. Wells moved to withdraw as counsel of record

for Mr. Taylor.  Mr. Wells informed the court Mr. Taylor intended to represent

himself *pro se*.  On that same date, Mr. Taylor filed an appearance form

indicating himself as counsel.

Thereafter, on December 18, 1995, the court entered the following order:

> The motion to withdraw of court appointed counsel, Joseph L.
> Wells, is denied.  Counsel is requested to serve in a stand-by
> advisory capacity only, in the event the defendant elects to represent
> himself, pro se.  The defendant is directed to declare his intentions in
> this regard by written statement filed with the clerk of court within
> ten (10) days to that effect, acknowledging his assumption of <u>all</u>
> matters related to his defense and preparation for trial.
>
> If defendant elects to continue to avail himself of the services
> of his court appointed counsel he shall so state by written statement
> within ten (10) days hereof.

Notwithstanding the court's explicit directive, Mr. Taylor never responded to the

December 18 order.  However, Mr. Taylor did draft, sign and file a "Motion to

Demurrer" and a "Writ of Mandamus" with the court prior to trial.  On January

24, 1996, the district court denied the "Motion to Demurrer" and "Writ of

Mandamus."

Mr. Taylor's trial began on March 11, 1996. Prior to jury selection, the

district judge encouraged Mr. Taylor to use the services of Mr. Wells. The court

stated:

> Mr. Taylor, as someone appearing on his own behalf, it's your
> right to do that, and we'll try the case just as well as we can under
> these circumstances.

> I do want to encourage you, however, to utilize Mr. Wells and
> get his guidance on matters that might not be familiar to you. It's
> very technical, it's not a simple matter, federal criminal procedure,
> and I want to make sure that this trial is fair to you and fair to your
> co-defendant as well as to the government. So he's there as a
> resource to you, and I do encourage you to use him as much as you
> can in order to facilitate the trial.

Although Mr. Taylor made no opening statement at trial, he cross-examined

some of the government's witnesses. Mr. Taylor allowed Mr. Wells to cross-

examine one government witness, and Mr. Taylor did not resist when Mr. Wells

objected to certain testimony. In addition, Mr. Taylor relied on Mr. Well's advice

with respect to certain matters. Mr. Taylor delivered a closing argument to the

jury.

The government's evidence at trial revealed Mr. Taylor came to Oklahoma

City, Oklahoma, from California in June 1995. Mr. Taylor brought two ounces of cocaine with him and Mr. Taylor and Ahmad Jamal Davis sold the cocaine to individuals in Oklahoma City. In July 1995, Mr. Taylor flew back to California, and returned with nine ounces of powder cocaine. The cocaine was "cooked" and half of it was sold.

In August 1995, Abdoulia Wallace, Mr. Davis, and Mr. Taylor were staying in apartment 120 at the Silvercrest Apartments in Oklahoma City. Apparently, Jimmy D. Reed had rented the apartment for Mr. Taylor and Mr. Wallace.

On or before August 2, 1995, the Oklahoma City Police Department obtained a search warrant permitting the police to search Silvercrest apartment 120. The police executed this search warrant on the afternoon of August 2, 1995. Mr. Taylor, Mr. Wallace, and Dominique Banks were in apartment 120 at the time of the search. When the officers entered the apartment, Mr. Taylor was "by the couch" near the front door, Mr. Banks was seated at a nearby table, and Mr. Wallace was situated in the northeast bedroom. Mr. Taylor consented to a police search of his person. Officer Mike Kelly, who conducted the search of Mr. Taylor, found no guns or weapons on Mr. Taylor.

Officer Kelly also participated in the search of the northeast bedroom. In the closet in the northeast bedroom, Officer Kelly uncovered approximately 22.6 grams of crack cocaine, a Jennings Bryco nine millimeter handgun, and some bullets. Officer Kelly found a Davis .380 handgun under the mattress in the northeast bedroom. In an entertainment center located in the northeast bedroom, Officer Kelly discovered more crack cocaine along with digital scales and plastic baggies. Also in the entertainment center, Officer Kelly found Western Union money transfers in the name of John Taylor and Joanne Taylor, and pawn shop tickets from A & V Pawn Shop in Long Beach, California. At trial, Stanley Zuckerman, the president of A & V Pawn Shop, testified his records established the pawn tickets found in the entertainment center belonged to Mr. Taylor.

Also at trial, Mr. Davis, Mr. Reed, and Rhonda Moore each testified they had never seen Mr. Taylor carry a gun. However, Burgundy Pierce testified she had seen Mr. Taylor with a gun on one or two occasions. Although her description of the gun she saw Mr. Taylor carrying was vague, Ms. Pierce stated it was a small handgun, and she believed it was a revolver, not an automatic.

On March 13, 1995, the jury returned a verdict of guilty against Mr. Taylor on the following three charges: (1) conspiracy to possess with intent to distribute

and to distribute cocaine base; (2) possession with intent to distribute cocaine base; and (3) possession of a firearm by a convicted felon. The jury acquitted Mr. Taylor on the charge of receipt of a firearm.

At sentencing, the court asked Mr. Taylor if he wished to continue to represent himself, and Mr. Taylor responded it did not matter to him. The court complimented Mr. Taylor on his intelligence and expressed its wish it had been put to "more constructive use." The court then sentenced Mr. Taylor to 360 months imprisonment for each drug count and 120 months imprisonment for the possession of firearm count. The court ordered the sentences to run concurrently.

## II. ISSUES RAISED ON APPEAL

Mr. Taylor raises the following two issues on appeal: (1) whether the district court violated Mr. Taylor's Sixth Amendment right to counsel by failing to adequately ensure Mr. Taylor's decision to waive his right to counsel was made voluntarily, knowingly, and intelligently; and (2) whether Mr. Taylor's conviction of possession of a firearm by a convicted felon should be reversed for insufficient evidence.

### III.  ANALYSIS

#### A.  Sixth Amendment Right to Counsel

Mr. Taylor first contends the district court violated his Sixth Amendment right to counsel by failing to adequately determine his decision to waive counsel and represent himself was made voluntarily, knowingly, and intelligently.  We review de novo the question of whether a waiver of counsel is voluntary, knowing, and intelligent.  *Brewer v. Williams*, 430 U.S. 387, 403-04 (1977); *United States v. Burson*, 952 F.2d 1196, 1199 (10th Cir. 1991), *cert. denied*, 503 U.S. 997 (1992); *United States v. Silkwood*, 893 F.2d 245, 248 (10th Cir. 1989), *cert. denied*, 496 U.S. 908 (1990).

An accused has a Sixth Amendment right to waive his right to counsel and conduct his own defense in a criminal case.  *Faretta v. California*, 422 U.S. 806, 821, 832 (1975); *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991), *cert. denied*, 502 U.S. 1106 (1992).  However, a waiver of counsel will not be valid unless it is "'an intentional relinquishment or abandonment of a known right or privilege.'"  *Willie*, 941 F.2d at 1388 (quoting *United States v. McConnell*, 749 F.2d 1441, 1450-51 (10th Cir. 1984)).  In determining whether a defendant has effectively waived his right to counsel we must conduct two distinct inquiries.  First, we must determine whether the defendant voluntarily waived his right to

counsel. *See United States v. Padilla*, 819 F.2d 952, 955-56 (10th Cir. 1987). Second, we must determine whether the defendant's waiver of his right to counsel was made knowingly and intelligently. *See id.* at 956. The defendant's waiver will be deemed effective only if it was made voluntarily, knowingly, and intelligently. This court "will indulge in every reasonable presumption against waiver." *Baker v. Kaiser*, 929 F.2d 1495, 1500 (10th Cir. 1991).

Applying the two-part inquiry to the case at bar, we first review whether Mr. Taylor voluntarily waived his right to counsel. The question of whether a defendant's waiver of counsel is voluntary turns on whether the defendant's objections to his counsel are such that he has a right to new counsel. *Padilla*, 819 F.2d at 955. In other words, for the waiver to be voluntary, this court must be confident the defendant is not forced to make a "choice" between incompetent counsel or appearing pro se. *Silkwood*, 893 F.2d at 248. However, "a refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver." *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976). Thus, unless a defendant establishes good cause entitling him to the appointment of new counsel, the defendant's decision to waive counsel will be deemed voluntary. *See Padilla*, 819 F.2d at 955.

In the present case, Mr. Wells moved to withdraw from his representation of Mr. Taylor on the grounds Mr. Taylor intended to represent himself *pro se*. Following the motion to withdraw, Mr. Taylor did not seek the appointment of substitute counsel. Rather, Mr. Taylor filed a notice of appearance indicating himself as counsel of record. The record does not indicate Mr. Taylor ever complained that Mr. Wells was incompetent or unprepared to provide adequate representation for Mr. Taylor. It appears Mr. Taylor simply decided to represent himself because he wanted to do so, not because he believed he was entitled to new counsel. Because Mr. Taylor never even argued Mr. Wells was unqualified to represent him or that Mr. Taylor was entitled to substitute counsel, we find his waiver of counsel to be voluntary.

Next, we must decide whether Mr. Taylor knowingly and intelligently waived his right to counsel. In determining this issue, we look to the record and the entire circumstances of the case, including the defendant's age and education, the defendant's previous experience with criminal trials, and the defendant's background, experience, and conduct. *Id.* at 958. The Supreme Court has stated the trial judge "can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." *Von*

-10-

*Moltke v. Gillies*, 332 U.S. 708, 724 (1947). "Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se." *Willie*, 941 F.2d at 1388. The record should establish the defendant had a sense of the magnitude of the undertaking and the inherent hazards of self-representation at the time of his decision to proceed *pro se*. *Padilla*, 819 F.2d at 956.

In *Padilla*, the defendant, who proceeded *pro se* at trial, appealed his convictions for unlawful possession of a firearm, arguing, *inter alia*, his Sixth Amendment right to counsel was violated because the record failed to establish he knowingly and intelligently waived his right to competent representation. *Id.* at 954-55. Although we stated the question of a knowing and intelligent waiver turns on the entire circumstances of the case, *id.* at 958, we noted, relying on Supreme Court precedent,

> The task of ensuring that defendant possesses the requisite understanding initially falls on the trial judge, who must bear in mind the strong presumption against waiver....
>
> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges

-11-

and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

....

This court has reiterated that the factors articulated must be conveyed to the defendant by the trial judge and must appear on the record so that our review may be conducted without speculation.

*Id.* at 956-57 (emphasis omitted) (quoting *Von Moltke*, 332 U.S. at 723-24). Because the record in *Padilla* did not indicate the trial court conducted a thorough and comprehensive examination to determine whether the defendant's waiver was knowingly and intelligently made, we concluded it was impossible to determine whether the defendant made his choice with his "eyes open." *Id.* at 957, 959. Consequently, we reversed the defendant's convictions. *Id.* at 964.

In the present case, the trial court warned Mr. Taylor on the first day of trial that federal criminal procedure was "very technical" and "not a simple matter." The court encouraged Mr. Taylor "to utilize Mr. Wells and get his guidance on matters that might not be familiar to [him]." Yet, other than these general advisements, the court did nothing to ensure Mr. Taylor's waiver of his right to counsel was knowing and intelligent. Similar to the trial court in *Padilla*, the court in the present case never advised Mr. Taylor of the dangers and disadvantages of self-representation. Nor did the court ever ask Mr. Taylor his

reasons for proceeding *pro se* or whether Mr. Taylor actually understood the consequences of his decision.

Although the magistrate judge informed Mr. Taylor of the charges against him at his arraignment, this was done outside the context of his waiver of the right to counsel. At no time did the trial court discuss with Mr. Taylor any possible defenses to the charges against him or circumstances that might serve as mitigating factors. Furthermore, the record does not indicate the trial court ever informed Mr. Taylor that he would be expected to follow the intricate rules of evidence and criminal procedure. *See id.* at 957.

Notwithstanding the trial court's failure to "make a comprehensive and probing formal inquiry into the knowingness and intelligence of [Mr. Taylor's] waiver," *see Willie*, 941 F.2d at 1391, the government contends the totality of the circumstances in the case establish Mr. Taylor knowingly and intelligently waived his Sixth Amendment right to counsel. The government contends Mr. Taylor is an intelligent individual who provided sound representation for himself. According to the government, because Mr. Taylor filed "skillfully written" pretrial motions, cross-examined witnesses with "the skill of a trial lawyer," and "professionally argued his case to the jury," he understood his right to counsel and effectively

waived that right.

The government cites *Willie* in support of its argument that the record as a whole establishes Mr. Taylor effectively waived his right to counsel. 941 F.2d at 1388-91. In *Willie*, the defendant, who was charged with failure to file income tax returns, informed the court that he would not accept any court-appointed attorney and he objected to any attempt by the judge to violate his right of self-representation. 941 F.2d at 1389. Prior to trial, the defendant filed ten *pro se* petitions with the court, including amended pleadings, two motions to dismiss, and jury instructions. *Id.* The defendant represented himself at trial and was convicted on four counts of failure to file income tax returns. *Id.* at 1387.

Thereafter, the defendant appealed his convictions to this court, arguing, *inter alia*, he did not make a knowing, voluntary, and intelligent waiver of his right to counsel. *Id.* at 1387-88. Although we found the trial court failed to conduct a thorough inquiry of the defendant on the record to ensure the defendant was aware of the dangers and disadvantages of self-representation, we concluded the surrounding facts and circumstances demonstrated the defendant understood and effectively waived his right to counsel. *Id.* at 1388-90. Specifically, we held "Willie's repeated and unequivocal assertions of his right to self-representation,

his continuous stubborn refusal to accept the services of admittedly competent and available counsel, his numerous *pro se* petitions and his clear expression that he could only work with an attorney who shared his views on taxation, constitute[d] a valid implied waiver of his right to counsel." *Id.* at 1390.

The facts of the present case are distinguishable from *Willie*. Unlike the defendant in *Willie*, *see id.* at 1390, Mr. Taylor did not make "repeated and unequivocal assertions of his right to self-representation." Mr. Taylor merely filed a notice of appearance indicating himself as counsel of record. Mr. Taylor did not even respond to the court's order directing Mr. Taylor to "declare his intentions [concerning self-representation]" in a written statement. In contrast to the defendant in *Willie*, *see id.* at 1388, Mr. Taylor never stated he would not accept any court-appointed attorney or "object[ed] to any attempt by the judge to violate that right." *Id.* at 1389.

Nor did Mr. Taylor stubbornly refuse to accept the services of counsel, as did the defendant in *Willie*. *See id.* at 1390. Mr. Taylor permitted Mr. Wells to cross-examine a government witness and Mr. Taylor did not complain when Mr. Wells lodged certain evidentiary objections at trial. Mr. Taylor also relied on the advice of Mr. Wells at times during the trial.

In addition, Mr. Taylor did not file numerous pretrial motions with the district court. While the defendant in *Willie* filed at least ten pretrial petitions, *id.* at 1389, Mr. Taylor only filed a *pro se* "Motion to Demurrer" and a "Writ of Mandamus" with the district court prior to trial. Mr. Wells assisted in the filing of these two motions. Although the government alleges these motions were "skillfully written", we believe this to be of no moment. The trial court denied the motions in a three-page order without a hearing.

In light of the strong presumption against waiver, *see Padilla*, 819 F.2d at 956, and the significant differences between the facts in the present case and those in *Willie*, we do not believe we can infer a knowing and intelligent waiver from the record in this case. At the time of trial, Mr. Taylor was an intelligent twenty-nine-year-old man.[1] However, even assuming Mr. Taylor's *pro se* representation was exemplary, as the government contends, we do not believe we can conclude Mr. Taylor knowingly and intelligently waived his right to counsel without engaging in impermissible speculation. *See Padilla*, 819 F.2d at 957. The district court utterly failed in its responsibility to advise Mr. Taylor of the

---

[1] The record is unclear as to whether Mr. Taylor is a high school graduate. Although Mr. Taylor claimed to have graduated from Rodia High School in Los Angeles, California, Rodia High School reported no record of Mr. Taylor's enrollment at the school.

perils and risks of self-representation, and to ensure Mr. Taylor's waiver was "understandingly and wisely made." *See id.* at 957. Unlike *Willie*, Mr. Taylor's conduct and the surrounding circumstances in the present case fail to demonstrate a knowing and intelligent waiver of Mr. Taylor's right to counsel. Consequently, we conclude the trial court violated Mr. Taylor's Sixth Amendment right to counsel by failing to obtain an effective waiver of that right.

Notwithstanding our conclusion, the government argues in the alternative that because Mr. Taylor did not unequivocally waive his right to counsel, Mr. Taylor received a hybrid form of representation. The government claims the trial court was under no obligation to ensure Mr. Taylor intelligently and knowingly waived his right to counsel because the representation was hybrid.

The government cites *United States v. Leggett*, 81 F.3d 220 (D.C. Cir. 1996) in support of its hybrid representation argument. In *Leggett*, the defendant was indicted and tried on charges of bribery conspiracy and bribery. *Id.* at 222. On the second day of trial, the defendant complained to the court concerning his counsel's lack of knowledge on issues the defendant deemed important to his defense. *Id.* at 224. When the court advised the defendant of his constitutional right to represent himself, the defendant informed the court "he was 'not

interested in representing [himself]' and was 'not interested in taking the lead,' but rather 'wanted clarification as to whether' he could 'interject certain questions' of a technical nature [to witnesses]." *Id.* at 225. Thereafter, the defendant cross-examined three government witnesses, posed questions to two defense witnesses, and made a closing argument to the jury following his counsel's closing argument. *Id.* at 226. Although the jury found the defendant guilty on the bribery conspiracy count, it did not reach a verdict on the bribery count. *Id.* at 223.

The defendant in *Leggett* appealed his conviction for bribery conspiracy, arguing, *inter alia*, the district court violated his Sixth Amendment rights by allowing him to proceed *pro se* without first determining he had knowingly and willingly waived his right to counsel. *Id.* at 222. In reviewing the defendant's claim, the D.C. Circuit noted the trial court is only obligated to make the defendant aware of the dangers and disadvantages of self-representation where the defendant has chosen to proceed *pro se*. *Id.* at 224. According to the court, "[t]he law presumes that a defendant has not exercised his right to represent himself nor waived the right to counsel in the absence of an articulate and unmistakable demand by the defendant to proceed *pro se*." *Id.* With respect to the defendant in *Leggett*, the court found the record clearly indicated he never waived his right to the assistance of counsel or invoked his right of self-

representation. *Id.* at 226. Consequently, the court held the Sixth Amendment did not require the district court to caution the defendant concerning the perils and risks of self-representation. *Id.* at 226.

In the present case, as in *Leggett*, Mr. Taylor participated in his defense at trial along with the help of counsel. However, unlike the defendant in *Leggett* who never invoked his right of self-representation, Mr. Taylor clearly elected to waive his right to counsel and proceed *pro se*. Prior to trial, Mr. Taylor filed an appearance form indicating himself as counsel and Mr. Wells moved to withdraw as counsel of record, stating Mr. Taylor intended to represent himself. Although the court never granted Mr. Wells' motion to withdraw, the court informed Mr. Taylor on the first day of trial that "as someone [a]ppearing on his own behalf, it's your right to do that, and we'll try the case just as well as we can under these circumstances." The court went on to encourage Mr. Taylor to seek Mr. Wells advise on unfamiliar matters. Thus, we believe the record establishes Mr. Taylor unequivocally invoked his right of self-representation and the court recognized such invocation. Mr. Wells' role in Mr. Taylor's defense was purely as an advisory counsel. Because Mr. Taylor made an "articulable and unmistakable" demand to proceed *pro se*, the trial court was obligated to ensure Mr. Taylor's waiver of counsel was knowingly and intelligently made. *See Leggett*, 81 F.3d at

224. The trial court's failure to secure such a waiver violated Mr. Taylor's Sixth Amendment right to counsel.[2]

Having determined the district court violated Mr. Taylor's right to competent counsel, we must next consider whether this violation is subject to harmless error review. In *Allen*, we interpreted the Supreme Court's decision in *Penson v. Ohio*, 488 U.S. 75 (1988), to preclude the application of harmless error analysis to waiver of counsel cases. *Allen*, 895 F.2d at 1579-80. "'[T]he right to counsel is "so basic to a fair trial that [its] infraction can never be treated as harmless error."'" *Id.* at 1580 (quoting *Penson*, 488 U.S. at 353-54.) Thus, the violation of Mr. Taylor's Sixth Amendment right to counsel in the case at bar was not harmless error.

## B. Sufficiency of the Evidence

---

[2] We note neither the appointment of advisory counsel nor the defendant's reliance on such counsel can relieve the trial court of its duty to ensure a defendant's waiver of counsel is knowingly and intelligently made. *See Padilla*, 819 F.2d at 959-60 ("the presence of advisory counsel in the courtroom or the defendant's acquiescence in counsel's participation does not, by itself, relieve the district court of its responsibility to ensure that defendant's waiver of counsel is knowingly and intelligently made. Anything less than full representation by counsel raises the question of valid waiver of the right to counsel.").

Mr. Taylor also asserts the evidence at trial was insufficient to support his conviction on Count 5, possession of a firearm by a convicted felon.[3]  In reviewing the sufficiency of the evidence in a criminal case, "'[t]he evidence -- both direct and circumstantial, together with reasonable inferences to be drawn therefrom -- is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'"  *United States v. Sanders*, 929 F.2d 1466, 1470 (10th Cir.) (quoting *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), *cert. denied*, 475 U.S. 1128 (1986)), *cert. denied*, 502 U.S. 846 (1991).  The evidence presented to support a conviction must be substantial; it must do more than raise a mere suspicion of guilt.  *Sanders*, 929 F.2d at 1470.

The jury in this case convicted Mr. Taylor of violating 18 U.S.C. § 922(g)(1) by possessing a Jennings Bryco nine millimeter pistol.  18 U.S.C.

---

[3]  Although we have determined Mr. Taylor's Sixth Amendment right to counsel was violated and Mr. Taylor is entitled to a new trial on all the charges against him, we must still determine whether the evidence was sufficient to support his conviction for possession of a firearm by a convicted felon.  *See United States v. Morris*, 612 F.2d 483, 491-92 (10th Cir. 1979) (considering appellants' sufficiency of the evidence argument after determining appellants were entitled to new trial because of violation of appellants' right to unanimous verdicts).  If the evidence was not sufficient to support that charge, as Mr. Taylor contends, the government would be precluded from retrying Mr. Taylor on that charge under the Double Jeopardy Clause of the Fifth Amendment.  *Id.*

§ 922(g)(1) prohibits any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year from possessing "in or affecting commerce, any firearm or ammunition." To obtain a conviction under § 922(g)(1), the government must establish three elements beyond a reasonable doubt: (1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce. *United States v. Capps*, 77 F.3d 350, 352 (10th Cir.), *cert. denied*, 116 S. Ct. 2568 (1996). Here, Mr. Taylor contends the United States failed to establish beyond a reasonable doubt the second element of this statute -- he knowingly possessed the Jennings Bryco nine millimeter pistol. According to Mr. Taylor, there is insufficient evidence to prove he actually or constructively possessed the firearm.

It is well settled the required "possession" for purposes of § 922(g) includes both actual and constructive possession. *See United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994). Generally, an individual has constructive possession over an object when he or she knowingly has ownership, dominion, or control over the object and the premises where it is found. *United States v. Hager*, 969 F.2d 883, 888 (10th Cir.), *cert. denied*, 506 U.S. 964 (1992); *Mills*, 29 F.3d at 549. In most cases, dominion, control, and knowledge may be inferred where a defendant has

exclusive possession of the premises; however, "joint occupancy alone cannot sustain such an inference." *Mills*, 29 F.3d at 549. "In cases of joint occupancy, where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm or other contraband.'" *Id.* In order to sustain a conviction based upon constructive possession, the government must present "'some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Id.* at 549-50 (quoting *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993), *cert. denied*, 510 U.S. 1198 (1994)).

In the case at bar, it is undisputed there is no evidence Mr. Taylor ever actually possessed the Jennings Bryco nine millimeter handgun. However, the government contends it proved Mr. Taylor constructively possessed the weapon. The Oklahoma police discovered the pistol in the closet of the northeast bedroom of apartment 120. The evidence at trial indicated Mr. Taylor was residing (albeit temporarily) at apartment 120 along with Mr. Wallace and Mr. Banks on August 2, 1995. Because there was joint occupancy of the premises where the gun was found, the government is required to produce some evidence to establish a nexus between Mr. Taylor and the firearm. *Mills*, 29 F.3d at 549.

In support of its argument that Mr. Taylor constructively possessed the Jennings Bryco nine millimeter pistol, the government points to the testimony of Burgundy Pierce. Ms Pierce testified she saw Mr. Taylor with a small handgun on one or two occasions. However, the date on which Ms. Pierce allegedly observed Mr. Taylor carrying a gun is unclear from Ms. Pierce's testimony. Furthermore, her description of the gun is vague and inconsistent with that of a Jennings Bryco nine millimeter pistol. Ms. Pierce stated she believed the gun she saw was a revolver. She also stated "it was one of those [guns] you have to squeeze the trigger each time [to fire]." Although a nine millimeter pistol fits the latter description, a nine millimeter is a semiautomatic weapon, not a revolver. Thus, we do not believe Ms. Pierce's testimony sufficiently established Mr. Taylor ever possessed or even had knowledge of the nine millimeter Jennings Bryco pistol discovered in apartment 120.

The government also contends it proved constructive possession through the testimony of Jimmy Reed. Mr. Reed testified he saw a .380 handgun laying on the fireplace mantle of apartment 120 on more than one occasion. We believe the testimony of Mr. Reed is irrelevant to the issue of whether Mr. Taylor constructively possessed the nine millimeter handgun. Count 5 of the indictment charged Mr. Taylor with knowingly possessing a Jennings Bryco nine millimeter

-24-

firearm, not a .380 caliber pistol.  Although Count 6 of the indictment charged Mr. Taylor with the unlawful receipt of a .380 pistol in violation of 18 U.S.C. § 922(k), the jury acquitted Mr. Taylor on that charge  Hence, we do not believe Mr. Reed's testimony concerning the .380 pistol establishes any nexus between Mr. Taylor and the Jennings Bryco nine millimeter handgun.

The government also contends the fact Western Union receipts and pawn shop tickets belonging to Mr. Taylor were found in the northeast bedroom established a sufficient nexus between Mr. Taylor and the Jennings Bryco nine millimeter handgun.  While it is undisputed the Western Union receipts and pawn shop tickets found in the northeast bedroom belonged to Mr. Taylor, these documents were not found in the same location as the gun.  The gun was found in the closet, while the Western Union receipts and pawn shop tickets were found in an entertainment center.  The government did not introduce any evidence connecting the Western Union receipts or pawn shop tickets to the gun or any other evidence discovered in the closet.  Thus, the Western Union receipts and pawn shop tickets merely established a connection between Mr. Taylor and the northeast bedroom, not between Mr. Taylor and the gun.

-25-

If the government had established Mr. Taylor was the sole occupant of the northeast bedroom, we could sustain Mr. Taylor's § 922(g)(1) conviction on the basis of the Western Union receipts and pawn shop tickets. *See United States v. Owens*, 70 F.3d 1118, 1127 (10th Cir. 1995) (evidence sufficient to establish constructive possession under § 922(g) where defendant was arrested while sleeping in bedroom, a semiautomatic handgun was under the bed, and there was no indication he shared his bedroom with anyone else). However, joint occupancy of a bedroom, without more, is insufficient to support a commission of constructive possession of a gun found in a bedroom. *United States v. Sullivan*, 919 F.2d 1403, 1431 (10th Cir. 1990). The evidence at trial indicated joint occupancy of the northeast bedroom. When the officers entered apartment 120 on August 2, 1995, the police found and arrested Mr. Wallace in the northeast bedroom, not Mr. Taylor. Furthermore, during the search of the northeast bedroom closet, the police seized a jacket containing a bus ticket in the name of Eric Reese.[4] Because the evidence indicated joint occupancy of the northeast bedroom, we cannot infer Mr. Taylor had constructive possession of the handgun from the mere fact Mr. Taylor was one of the bedroom's occupants.

---

[4] The Oklahoma police arrested Mr. Reese during a search of Silvercrest Apartment 159 on August 2, 1995. The police apparently executed search warrants for apartments 120 and 159 at the same time.

Based on our review of the entire evidence, which we conducted in the light most favorable to the government, we do not believe a reasonable jury could conclude beyond a reasonable doubt Mr. Taylor actually or constructively possessed the Jennings Bryco nine millimeter handgun. Not only did the government fail to present any evidence tending to show Mr. Taylor had any knowledge of the gun, but it also failed to establish any nexus between Mr. Taylor and the gun. Consequently, we find Mr. Taylor's conviction under 18 U.S.C. § 922(g)(1) must be reversed based on insufficient evidence.

## IV. CONCLUSION

Based on the foregoing reasons, we hereby reverse Mr. Taylor's conviction on Count 5, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). We also reverse and remand Mr. Taylor's remaining convictions to the district court for proceedings consistent with this opinion.