**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOE BOB TURNER,

Defendant - Appellant.

No. 00-4105

(D. Utah)

(D.C. No. 99-CR-261-C)

---

**ORDER AND JUDGMENT**[*]

---

Before **McWILLIAMS**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

Joe Bob Turner was convicted following a jury trial on one count of possession of one or more firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He raises two arguments on appeal. First, he contends that the evidence introduced at trial was insufficient to establish the possession element of § 922(g)(1). Second, he claims that the district court erred in determining that his state sentence for prior convictions was a "prior sentence" under U.S.S.G.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

§ 4A1.2(a)(1) and in increasing his criminal history category score by three points as a result. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I. BACKGROUND

Beginning in August of 1998, three different FBI agents began contacting and meeting with Defendant at the residence located at 1661 West Crystal Avenue in Salt Lake City, Utah ("1661 Crystal Avenue" or "Crystal Avenue home" herein). Special Agent Donald Schultz met with Defendant at the Crystal Avenue home at least ten times between August 1998 and April 1999. R. Vol. II at 6. Special Agent William Thiede saw Defendant at the home five times prior to his April 19, 1999, arrest. R. Vol. III at 10. Special Agent Tom Vu met with Defendant at the Crystal Avenue home twenty times between August 1998 and April 1999. Id. at 109. Three of those meetings occurred in the upstairs bedroom of the home. Id. Special Agent Vu last met with Defendant on the day that he was arrested. Id. at 110. Vu testified that Defendant was living in the upstairs bedroom and that he never indicated that he had been kicked out or that he was no longer living there. Id. Defendant was also observed outside the Crystal Avenue home on April 19, 1999, loading a truck and trailer. R. Vol. II at 3-5.

In the afternoon of April 19, 1999, members of the Salt Lake Violent Crimes Task Force arrested Defendant on several state warrants. Following his arrest, Defendant was taken to the FBI office where, after being informed of and waiving his Miranda rights, he was interviewed for approximately ninety minutes. Id. at 8-10. Defendant indicated to FBI Special Agents Schultz and Johnson that 1661 Crystal Avenue was his residence and gave them verbal and written permission to search that residence. Id. at 23. Defendant also told the FBI agents that two .22 caliber weapons would be found in the garage of the Crystal Avenue home and that additional weapons would be found elsewhere on the premises. Id. at 24-25.

Pursuant to the consent given by Defendant, law enforcement officers searched 1661 Crystal Avenue during the evening of April 19, 1999. Upon arriving at the home, the officers encountered several people. One of them indicated that the home belonged to Defendant. R. Vol. III at 11. Another, Pam King's son, told FBI agents that the upstairs bedroom was his mother and Joe's bedroom. Id. at 46. None of the people found at the home when it was searched was named Joe or Joseph. Id. at 52-53.

When officers entered the upstairs bedroom, they found both male and female clothing strewn about. Id. at 41. Officers also observed a black leather jacket with a pin on it which read "Joe." Id. at 65. While officers were

searching the upstairs bedroom, the telephone in that room rang nearly non-stop. All of the callers asked for Joe. Id. at 42, 51. The search of the upstairs bedroom yielded three handguns. Two, a .22 caliber Derringer and a .40 caliber Ruger, were found in an unlocked filing cabinet. The third, a .22 caliber revolver, was found elsewhere in the 7' x 15' bedroom. The officers also searched the unattached garage at the Crystal Avenue home. They entered the garage through an unlocked door and found a loaded .22 caliber rifle standing on end in the corner in plain view.

Based on the evidence seized during the April 19, 1999, search of the Crystal Avenue home, the United States charged Defendant with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Prior to his conviction on the federal charge, Defendant was sentenced on the state charges for which he was arrested on April 19, 1999.[1] Following Defendant's conviction on the federal charge, the district court instructed the parties to brief and argue the issue of whether or not Defendant's state sentence should be treated as a "prior sentence" under U.S.S.G. § 4A1.2(a)(1).

---

[1]Defendant was sentenced on July 12, 1999, to zero to five years in state prison on three felony counts: two counts of distribution of methamphetamine and one count of possession of stolen property.

The district court ultimately determined that the conduct underlying Defendant's state convictions was different and thus severable from his conduct in the federal offense. Accordingly, the district court treated Defendant's state sentence as a "prior sentence" and added three points to Defendant's criminal history category score. The calculation resulted in a criminal history category of IV, an offense level of 21, and a guideline sentence range of 57-71 months. The district court sentenced Defendant to 57 months in prison and 36 months of supervised release to be served consecutively with the state sentence he was then serving. This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In order to prove a § 922(g)(1) violation, the government must establish the following elements beyond a reasonable doubt: (1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm; and (3) that the possession was in or affecting interstate commerce. [2] See United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997).

---

[2] 18 U.S.C. § 922 provides in pertinent part:
  **§ 922.     Unlawful acts**
  (g) It shall be unlawful for any person–
        (1) who has been convicted in any court of, a crime punishable
                                                        (continued...)

Defendant focuses on the second element of the charged crime, arguing that "the evidence is insufficient for a reasonable jury to find that [Defendant] unlawfully possessed the firearms." Appellant's Br. at 12. Defendant's sufficiency-of-the-evidence challenge is:

> faced with a high hurdle: in reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999) (quotation omitted).

For purposes of § 922(g)(1), "possession" includes both actual and constructive possession. United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). In order to establish constructive possession, the government must show that Defendant "knowingly [held] ownership, dominion, or control over the [guns] and the premises where [they were] found." Taylor, 113 F.3d at 1144-45 (citing Mills, 29 F.3d at 549). Joint occupancy of the premises where the guns

[2](...continued)
by imprisonment for a term exceeding one year;
. . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

were found is not enough, standing alone, to support an inference of knowledge, dominion and control over the guns. See Mills, 29 F.3d at 549 (citing United States v. Sullivan, 919 F.2d 1403, 1431 (10th Cir. 1990)). Thus, where the government relies on circumstantial evidence of knowledge, dominion and control in joint occupancy cases, it must present evidence showing "some connection or nexus between the defendant and the firearm or other contraband." Id. In other words, there must be evidence "supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." Id. at 550 (quotation omitted).

As indicated above, there is abundant evidence in the record from which a reasonable jury could conclude that Defendant was a joint occupant of the Crystal Avenue home and its upstairs bedroom at the time of his arrest. However, the government must also establish a nexus between Defendant and the firearms found in the Crystal Avenue home by presenting evidence either demonstrating or supporting an inference that Defendant knew about and had access to them. Id. After examining the record, we conclude that the government has done so.

Defendant's indication to Schultz and Johnson that guns would be found at the Crystal Avenue home, the small size of the upstairs bedroom where the three handguns were found, the fact that a gun was found in the garage and other guns were found elsewhere as Defendant had predicted, and the fact that none of the

guns were locked up support a conclusion that Defendant had knowledge of and access to the guns found at the Crystal Avenue home. This evidence, together with the evidence showing Defendant's joint occupancy of the Crystal Avenue home and its upstairs bedroom, when viewed in the light most favorable to the government, provides an adequate basis from which a reasonable jury could find that Defendant constructively possessed the guns beyond a reasonable doubt. Therefore, we conclude that the evidence presented against Defendant was sufficient to support his conviction under § 922(g)(1).

## B. Prior Sentences

Defendant next argues that the district court erred in treating his state sentence as a prior sentence because "the state convictions were integrated with and related to the present federal offense." Appellant's Br. at 24. We review the district court's application of the sentencing guidelines to the facts under a due deference standard and review de novo the overall application of the guidelines for errors of law. United States v. Butler, 966 F.2d 559, 563 (10th Cir. 1992).

For purposes of calculating the criminal history score, a "prior sentence" is "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1) (emphasis added). The state court sentence can be considered a "prior sentence" even though it was imposed

between the date of the instant federal offense and the date of the federal sentencing so long as the state sentence was for conduct not part of the instant federal offense. United States v. Banashefski, 928 F.2d 349, 351 (10th Cir. 1991); U.S.S.G. § 4A1.2, comment. (n.1). Defendant, therefore, can only succeed on this point if his state conviction was for conduct that constitutes a part of the instant federal felon-in-possession offense. Banashefski, 928 F.2d at 351.

Defendant makes much of the fact that the investigation which resulted in his April 19, 1999, arrest was a joint investigation between federal and state officials and that he was arrested on state warrants. He also points out that there had been no state conviction and sentence prior to his arrest on the federal charge. Defendant further states that this case "involves the commencement of federal prosecution and state prosecution at the same time, with the same arrest; there was no prior conviction and therefore no 'prior sentence.'" Appellant's Br. at 27. Defendant's arguments miss the mark.

The proper inquiry does not examine whether a state conviction is obtained prior to an arrest on a federal charge, whether federal officers participated in the investigation and arrest, or whether the federal charges arose out of a search that was possible due to the defendant's arrest on state charges. Rather, the proper inquiry asks whether the conduct for which the state sentence was imposed is part

of the conduct upon which the instant federal charge rests. If not, and the state sentence is handed down before the federal sentence, the state sentence is a "prior sentence" under the federal sentencing guidelines.

The conduct for which Defendant was sentenced in state court was distributing methamphetamine and possessing stolen property. The conduct underlying the instant federal offense is the possession by a felon of a firearm in interstate commerce. Distributing methamphetamine and possessing stolen property is conduct completely different from and unrelated to possessing a firearm as a convicted felon. Therefore, the conduct for which Defendant's state sentence was imposed is not part of the instant federal offense. Accordingly, we conclude that the trial court did not err in treating Defendant's state sentence as a "prior sentence" in determining his criminal history category.

## III. CONCLUSION

For the reasons stated above, we conclude that the evidence before the jury was sufficient to support Defendant's conviction under 18 U.S.C. § 922(g)(1). Furthermore, we find no error in the way Defendant's sentence was calculated. We therefore AFFIRM his conviction and sentence.

ENTERED FOR THE COURT

Stephen H. Anderson

Circuit Judge