**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

JAMES PENICK,

  Defendant - Appellant.

No. 00-6346
D.C. No. CR-99-202-R
(W.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **BRORBY**, Circuit Judges, and **ROGERS**, District Judge.[**]

This is a direct appeal from defendant/appellant James Penick's conviction of one count of attempted escape in violation of 18 U.S.C. § 751(a) and one count of possession of a prohibited object (a homemade grappling hook and rope) in violation of 18 U.S.C. § 1791(a)(2). Defendant was sentenced to a thirty-month

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

[**] The Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation.

term on each count to run concurrently, but consecutive to a prior sentence. We affirm the convictions.

Defendant was at FCI-El Reno when the events of this case occurred. This prison has an area for inmate housing and recreation. There is also a separate Unicor area where manufacturing by inmates is conducted. On October 10, 1999, Penick and his cellmate, Darrel Hudec, were reported missing from the inmate housing unit. At approximately 9:15 p.m., Penick and Hudec were found in the out-of-bounds Unicor area. Penick was hiding under a stairwell, covered with a plastic sheet. He was bleeding and suffering back pain after falling from a fence. Hudec was found nearby Penick. The homemade grappling hook and rope were found near where Penick was hiding. Penick represented himself at trial with the aid of standby counsel. But, he was represented by counsel at sentencing and on appeal.[1]

In this appeal, Penick makes three arguments: 1) his waiver of counsel was not knowing and intelligent; 2) the evidence was not sufficient to sustain the convictions; and 3) his sentence was miscalculated under the Sentencing

---

[1] In spite of his representation on appeal, Penick has filed a pro se motion to overturn and remand for a new trial. This motion asks for a new trial because undescribed issues in supplemental pro se briefs which plaintiff alleges he mailed to the attorney for the government have not been addressed in the government's brief. The court has no knowledge of what these issues are or proof that the issues were properly raised before the district court or as part of this appeal. Therefore, the pro se motion for new trial shall be denied.

Guidelines.

Waiver of counsel

On May 3, 2000 at a pretrial hearing, Penick informed the district judge of his desire to represent himself. The judge asked Penick if he had any experience representing himself and Penick replied, "No." Penick asked that his counsel be allowed to assist him in the case. The judge granted this request. At that point, the judge told Penick that he had a month to change his mind. He further stated:

> I hope you'll change your mind and I'll tell you why. Mr. Lacy is a very good lawyer. I know you are somewhat unhappy with him. He's a very good lawyer and he's trained in how to do this and you're not.
>     And I've had defendants represent themselves before and, frankly, they don't do a very good job. And I think it's certainly in your best interest to let him handle the entire matter, certainly with your assistance. There are questions that may need to be asked or arguments that may need to be made that only a trained and skilled lawyer can handle, and I hope you'll give that some thought before you actually carry through with it. All right?

> PENICK: Yes, sir.

The trial judge asked the prosecutor to inform Penick of the maximum punishment for the two counts he was facing. Penick stated that he understood the possible penalties and then questioned the rationality of the second count. At that point the prosecutor clarified how he intended to prove the second count. Penick stated that he did not have any questions at that time. When the judge asked why he wanted to represent himself, Penick said:

Certain strategies which I'm going to – I'm going to implement, and I feel, even though I have a great deal of respect and admiration for Mr. Lacy, even though occasionally he puts postage stamps on his faxes, I'm not going to hold that against him, but it's just something I have to do myself.

Immediately prior to trial the trial judge told Penick that he would be expected to do direct examination, cross examination, an opening statement if he wanted, and a closing argument. He further told Penick that he would be expected to follow the rules of evidence and procedure. The judge pointed out situations where counsel would be helpful in communicating with the court, contacting persons who might be helpful to the defense, and providing the proper foundation for admitting evidence. Mr. Penick said that he understood the pitfalls of self-representation. He acknowledged, "I'm going to have difficulties." But, he wished to proceed as his own attorney. Indeed, Penick insisted upon representing himself while admitting "I don't know the first thing about the law."

During the trial, it became clear that the "strategies" Penick wished to implement involved advocating jury nullification and accusing the district judge of "shredding" the Constitution when the district judge attempted to confine Penick's testimony to the facts of the case, as opposed to the law of the case.

We review de novo whether a waiver of counsel was voluntary, knowing and intelligent. See United States v. Taylor, 113 F.3d 1136, 1140 (10th Cir. 1997) cert. denied, 528 U.S. 904 (1999). There is no claim in this case that Penick's

waiver of counsel was involuntary.  In determining whether a waiver of counsel was knowingly and intelligently made, the court must look "to the record and the entire circumstances of the case, including the defendant's age and education, the defendant's previous experience with criminal trials, and the defendant's background, experience, and conduct."  Id.  "Ideally , the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se."  United States v. Willie, 941 F.2d 1384, 1388 (10th Cir. 1991) cert. denied, 502 U.S. 1106 (1992)).  "The record should establish the defendant had a sense of the magnitude of the undertaking and the inherent hazards of self-representation at the time of his decision to proceed pro se."  Taylor, 113 F.3d at 1141.  It is not enough to simply tell a defendant that a federal criminal trial is not a simple matter and that there are very technical issues to consider.  Id.

Nevertheless, there are situations where waiver of counsel is valid without extensive formal inquiry by the court; e.g., when the defendant appears to be waiving counsel as a tactic or stratagem and surrounding circumstances, including the defendant's background and conduct, show that the defendant understands his right to counsel and the difficulties of pro se representation.  U.S. v. Hughes, 191

F.3d 1317, 1323 (10th Cir. 1999) <u>cert. denied</u>, 529 U.S. 1022 (2000). In <u>Willie</u>, this court found a valid waiver in spite of the absence of a full discussion of the punishments, possible defenses and risk of proceeding <u>pro se</u> by the district court.

> Willie's repeated and unequivocal assertions of his right to self-representation, his continuous stubborn refusal to accept the services of admittedly competent and available counsel, his numerous <u>pro se</u> petitions and his clear expression that he could only work with an attorney who shared his views on taxation constitute a valid implied waiver of his right to counsel.

941 F.2d at 1390.

In the instant case, Penick was 61 years old at the time of trial. He had a GED. He had prior experience in criminal trials. He was aware of his right to appointment of counsel and the possible punishments in this case. He was also aware that he had to conduct the examination of witnesses, give opening and closing statements, and follow the rules of evidence and procedure. Penick repeatedly and clearly demanded that he be allowed to represent himself. He filed four pleadings, mostly challenging the jurisdiction of the court. He was capable of coherently expressing himself. He accepted the assistance of standby counsel, but he did not want representation by an attorney who would not advance his views regarding jury nullification or would not put the "judicial oligarchy," as Penick put it, on trial.

After comparing this matter with the result in <u>Willie</u> and after a full consideration of the circumstances of this case, the court believes Penick had a

-6-

firm understanding of the risks of self-representation and knowingly and intelligently waived his right to appointed counsel. Therefore, we reject Penick's first argument on appeal.

Sufficiency of the evidence

When reviewing a challenge to the sufficiency of the evidence, the court considers the record in a light most favorable to the government and decides whether the direct and circumstantial evidence together with any reasonable inferences that could be drawn therefrom would support a reasonable jury's verdict of guilty beyond a reasonable doubt. See United States v. Floyd, 81 F.3d 1517, 1525 (10th Cir.) cert. denied, 519 U.S. 851 (1996).

Defendant contends first, quoting 18 U.S.C. § 751(a), that there was insufficient evidence that he was in the custody of "the Attorney General or his authorized representative or [in] any institution or facility in which he is confined by the direction of the Attorney General, or [in] any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner" when he attempted to escape. However, testimony was presented at trial that defendant was serving a federal sentence out of the Southern District of Ohio at the time he was incarcerated at FCI-Reno, a Bureau of Prisons medium-security prison. There was no evidence contradicting this testimony. We believe this is sufficient for a jury to conclude beyond a reasonable doubt that

defendant was in the custody of the Attorney General. See U.S. v. Rocha-Leon, 187 F.3d 1157, 1159 (9th Cir. 1999) (commitment to custody of the Bureau of Prisons under 18 U.S.C. § 3621 is also commitment to the custody of the Attorney General or a facility at the Attorney General's direction under § 751(a)). This evidence is also sufficient to establish custody by virtue of any process issued under the laws of the United States by a court under § 751(a). Id.

Penick's second challenge to the sufficiency of the evidence pertains to the count for possession of a prohibited object by an inmate in a prison. The prohibited object in this case was the grappling hook and rope. Penick asserts that the evidence was insufficient to establish that he was in actual or constructive possession of the grappling hook and rope.

The evidence in this case showed Penick and his cellmate, Hudec, were missing during a count at FCI-El Reno on October 10, 1999. They were the only inmates missing. When a search was conducted, Penick and Hudec were discovered in the Unicor compound at the institution. At the day and time when Penick and Hudec were discovered, the Unicor compound was out-of-bounds to all inmates. When Penick was discovered, he complained of injuries he received after falling from a fence between the recreation yard and the Unicor area. The rope attached to a grappling hook was on a fence near Penick and was positioned so it might facilitate an escape from the institution. From this evidence, a

reasonable jury could conclude that Penick was in possession of the grappling hook and rope, jointly and constructively, as he and Hudek used it to promote their attempted escape. Therefore, the court rejects Penick's second challenge to the sufficiency of the evidence.

Sentence

Penick contends that the district court misapplied U.S.S.G. § 4A1.1(d) and (e) in calculating his sentence. These sections of the Guidelines increased the criminal history category of Penick because his offenses were committed while under a criminal sentence or on escape status. This is an issue of law which this court reviews de novo. United States v. Flower, 29 F.3d 530, 534 (10th Cir. 1994) cert. denied, 513 U.S. 1129 (1995).

Penick contends that it is impermissible double counting to consider his prison status in calculating his offense level under U.S.S.G. § 2P1.1(a)(1) or U.S.S.G. § 2P1.2(a)(2), and then have his criminal history category increased because he was serving a sentence in prison when the offense occurred pursuant to § 4A1.1(d)&(e). This court rejected Penick's argument in U.S. v. Goldbaum, 879 F.2d 811, 813 (10th Cir. 1989). In addition, Application Note 5 to U.S.S.G. § 2P1.1 requires the independent calculation of criminal history points under Chapter 4, Part A of the Guidelines. Accordingly, we deny Penick's final argument on appeal.

<u>Conclusion</u>

The judgment of the district court shall be affirmed.

Entered for the Court


Richard D. Rogers
District Judge